UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re Application of Melanie Anne Chen Pursuant to Title 28, United Code Section, Section 1782 to Appoint a Commissioner to Obtain Evidence for Use in Civil Litigation Pending in London, England. | ECF Miscellaneous Case<br><br>Misc. Action No. 20-MC- _____ (    ) |

## *EX PARTE* APPLICATION FOR ORDER PURSUANT TO TITLE 28 UNITED STATES CODE SECTION 1782 AND FOR EXPEDITED PROCESSING

Applicant, Melanie Anne Chen (hereinafter "Ms. Chen") pursuant to Title 28, United

States Code, Section 1782 is seeking and asking this Honorable Court to issue an Order, a

proposed order is attached, appointing a "commissioner" to collect evidence for use before a

foreign tribunal in the United Kingdom. Applicant seeks to collect evidence located in the

District of Columbia, as further explained *infra*, for the defense of an ongoing civil proceeding

pending in the United Kingdom that is set to go to trial on 6 July 2020. As the trial is relatively

soon, and the current COVID-19 pandemic may make evidence collection more challenging,

Applicant seeks expedited processing of this Application, if possible.

### A.    Factual Background

Ms. Chen is a resident of the district of Cascade in Trinidad and Tobago. Ms. Chen

currently is involved in a litigation pending before the High Court of Justice, Business and

Property Courts of England and Wales, Commercial Court, Queen's Bench Division, to wit;

*KMG International NV v. Melanie Anne Chen and Chipper Management Limited*, Claim No. CL-

2017-000753 (the "U.K. litigation"). The U.K. litigation evolves, in part, from the transfer of

commercial holdings after the death of one Dan (also known as "Dinu") Costache Patriciu ("Mr.

Patriciu"), a wealthy Romanian businessman. On 19 August 2014, Mr. Patriciu died and the beneficiaries of his estate (the "Estate") included his two daughters, Ana Patriciu and Maria Patriciu, the former being the person of most interest in the U.K. litigation.

More specifically, the U.K. litigation flows from circumstances surrounding the alleged transfer of one commercial enterprise to Ms. Chen's and/or Ana Patriciu's constructive control, which is disputed by Ms. Chen, and the subsequent monetization of that company. Ms. Chen denies she was materially involved in any such transfers, but in the U.K. litigation the claimant, the equivalent of a plaintiff in U.S. civil proceedings, KMG International NV ("KMG"), a Dutch company has leveled some serious accusations against Ms. Chen. At bottom, KMG challenges the timing and circumstances around the transfers of ownership in a German company, Novero GmbH ("Novero") that was a sub-sub-subsidiary of Mr. Patriciu's Swiss holding company, DP Holding SA ("DPH")[1].

DPH was the company Mr. Patriciu set-up to hold the many corporate assets owned by Mr. Patriciu. Mr. Patriciu owned 100% of DPH's shares prior to his death on 19 August 2014. Novero was involved in the design, manufacture and distribution of automotive communications and multimedia products, may have employed around 250 people and, in 2014, allegedly had over $90 million in revenue. KMG more or less argues Novero was "dissipated" by Ms. Chen in a concerted effort to harm KMG's financial interests.

In the U.K. litigation, KMG alleges that Ms. Chen and an entity that she directs, namely, co-defendant British Virgin Islands legal entity called Chipper Management Limited ("CML"), more or less, as directors, or *de facto* directors, engaged in a series of transactions ultimately

---

[1] Novero, as well as some other companies in the DPH structures, were held and controlled by Novero Investments B.V. ("NIBV"), a company incorporated under the laws of the Netherlands. NIBV, at one point, was owner of 100% of the issued share capital of a number of subsidiaries, including the shares of Novero GmbH.

transferring the assets and shares in Novero to Laird Plc, a United Kingdom company. Laird Plc is a publicly-traded technology company on the London Stock Exchange that provides systems, components and solutions to the automotive industry. KMG alleges that this final transfer of Novero involved a value-transfer of €65 million or roughly $72 million[2]. The actual payment Laird Plc made for its acquisition of Novero allegedly was £39.4 million in cash and £10.4 million in Laird Plc shares, or about $72 million in total. KMG further alleges the Laird Plc payments were made to entities and structures controlled by and for the benefit of Ana Patriciu and Ms. Chen.

In the U.K. litigation KMG alleges that Ms. Chen and CML are responsible for setting-up this series of transfers that ultimately resulted in the sale of Novero to Laird Plc for which the original controlling shareholder of Novero, namely, NIBV, received "no consideration" and this thus transferred Novero and all of its assets from DPH to Laird Plc in a deceptive manner. KMG more specifically alleges that Ms. Chen and CML violated tortious duties under Dutch law[3] and that as directors, or *de facto* directors, they violated legal duties they owed to NIBV when they approved deals for "no consideration" as allegedly occurred in the initial transfer of Novero shares in September 2014.

Finally, KMG alleges that Ms. Chen, CML and, by implication, Ana Patriciu, were part of a conspiracy to prevent KMG collecting on a $200 million USD (plus interest and costs) arbitration order obtained by KMG against DPH and/or the Estate on 30 April 2016. KMG's arbitration award arose out of a share sale and purchase transaction of a DPH controlled entity completed during the period 2007 to 2009, when Mr. Patriciu still ran and owned DPH. In

---

[2] As the exact dates of transactions and valuations of Novero are much disputed in the U.K. litigation, the average exchange rate in 2015 was $1.11 U.S. dollars for €1 Euro.
[3] In the U.K. litigation the application of Dutch or English law to some legal issues in the matter is also disputed by the parties.

particular, KMG, via a company with which it subsequently merged, acquired from DPH an energy company known as The Rompetrol Group N.V. ("Rompetrol"). Rompetrol is a Dutch incorporated entity that runs oil and gas operations in Eastern Europe, but primarily in Romania. KMG acquired Rompetrol for $1.75 billion USD.

In 2006 the government of Romania initiated criminal proceedings against Mr. Patriciu and others alleging, among other things, that Mr. Patriciu and the other defendants had embezzled monies from the Romanian State. The embezzlement was said to arise from the failure of one of Rompetrol's subsidiaries, Rompetrol S.A., to pay $58.5 million it had received under a contract with a company called Repsol S.A. to the Romanian State. This sum was claimed by the Romanian State pursuant to two decrees the Romanian State had made regarding those monies. Rompetrol S.A. was joined to the criminal proceedings as a civil party for the purposes of recovering this $58.5 million plus interest.

In an August 2012 decision the Romanian court of first instance dismissed the criminal charges and ruled that Rompetrol had no outstanding liabilities to the Romanian state. However, in October 2014, a few weeks after Mr. Patriciu passed away, a Romanian court of appeal reserved the trial court's decision and Rompetrol was found liable to the Romanian Ministry of Public Finances for approximately $58.5 million USD, plus interest. According to KMG's allegations Rompetrol's liability to the Romanian state, with interest, has now ballooned to approximately $119 million USD. The share transfer agreement between DPH and KMG's successor for the Rompetrol shares contained an indemnity agreement in which DPH had to indemnify KMG for any liability arising out of these Romanian proceedings. KMG initiated arbitration proceedings against DPH and the Estate in late November 2014 for indemnity after Rompetrol had been found liable by the Romanian court of appeal.

The numerous complicated transactions summarized above that resulted in the underlying and ongoing U.K. litigation need not be further elaborated in this application. The merits of the somewhat complex U.K. litigation are before English jurists and not this Court. The most important facts relate to why this Application is before this Court, namely, that there may be evidence in this Court's jurisdiction that is crucial for the Applicant's defense against the serious allegations in the U.K. litigation, that in spite of her best efforts the Applicant could not obtain this evidence in the U.K. litigation and, importantly, that the evidence requested in this application will not be overly burdensome on any U.S. person requested to produce evidence because the requests served will be narrowly focused.

In particular, the Applicant is seeking information held by Richard "Rick" Reeves Burt ("Burt"), a principal in the firm of McLarty Associates, located at 900 17th Street N.W. Suite 800, Washington, D.C. 20006. McLarty Associates is a consulting firm that, among other things, helps companies negotiate their way through international diplomatic circumstances, a fixer of sorts. *See, e.g.,* https://maglobal.com/what-we-do/. In 2016, Burt was retained to assist KMG, the eventual claimant (plaintiff) in the U.K. litigation, as a vaguely defined intermediary, ostensibly for the purpose of reaching out to Ms. Chen and Ana Patriciu and find a way forward towards a possible resolution of the KMG's efforts to collect under the Award KMG had obtained in the Rompetrol arbitration. Burt was familiar with Ms. Chen and DPH from past his dealings with her and Mr. Patriciu by helping DPH raise money to fund one of DPH's business interests.

Burt was an ideal candidate to help KMG as he had developed a relationship with Ms. Chen and the Patriciu family. Burt communicated with Rompetrol and KMG employee Azamat Zhangulov ("Zhangulov") and Gretchen King ("King"), an investigator, ostensibly as part of a Burt bridge-building effort between KMG and persons with whom Burt had significant

reputational currency. Burt participated in meetings and phone calls that involved Ms. Chen as well members of the Patriciu family. What Burt was actually retained for, how he came to approach Ms. Chen, what was said, or not said, by KMG to Burt prior to those meetings and by the parties at those meetings and calls is relevant in the U.K. proceedings. Specifically, Ms. Chen's alleged central role and the manner in which she conducted herself in and about these discussions is a major plank of KMG's case that Ms. Chen continued to control DPH after Mr. Patriciu's death, when the defense is that she did not.

Applicant only desires to obtain copies of documents and communications generated or made during the period 1 May 2016 to 31 December 2016. This would include any notes, whether hand written or typed, of meetings or telephone calls between Burt and any representatives of KMG, Rompetrol, King, Ms. Chen or Ana or Maria Patriciu; copies of any e-mails between Burt and Zhangulov, whether sent to or received from Azamat.Zhangulov @rompetrol.com, a.zhangulov@kmg.kz or any personal e-mail addresses belonging to Zhangulov; and copies of any WhatsApp, Signal, SMS or other instant messages between Burt and King or Zhangulov.

Applicant also desires copies of any documents entitled or referring to KMG's "leverage points" either sent to Burt by King or Zhangulov or sent by Burt to King or Zhangulov and copies of any documents entitled "Investigative Findings to Support Settlement" or any documents referring to the same either sent to Burt by King or Zhangulov or sent by Burt to King or Zhangulov. Finally, Applicant desires copies of any documents entitled "Strategy" or "Strategy.PPT" either sent to Burt by King or Zhangulov or sent by Burt to King or Zhangulov. In addition, Applicant seeks to depose Burt and question him on his recollection of meetings and

calls and ask to identify and explain relevant documents that may have been recovered from McLarty Associates.

Applicant sought copies of e-mails and communications between Burt and Zhangulov or KMG in the U.K. litigation, but U.K. counsel for Applicant was informed that those e-communications were no longer available from KMG or Zhangulov. At present, KMG has not identified Burt as a witness in the U.K. proceedings in spite of Burt's role in discussions with Ms. Chen and others. Burt is located in the District of Columbia and is not subject to the personal jurisdiction of the relevant U.K. court as he is not a party to that U.K. litigation. In conclusion, Applicant seeks by this application to reconstruct the documentary record as regards communications between Burt, King and Zhangulov in the period 1 May 2016 to 31 December 2016.

**B.     Law and Argument**

**1. Title 28, United States Code, Section 1782, Text, History, and Purpose**

Congress enacted 28 U.S.C. § 1782 to authorize discovery assistance to litigants or other "interested persons" for "use in proceedings before foreign and international tribunals". The statute, in the relevant part, provides:

The district court of the *district in which a person resides or is found* may order him to give his testimony or statement *or to produce a document or other thing for use* in a proceeding in a foreign or international tribunal . . . . The order may be made . . . *upon the application of any interested person* and may direct that the testimony or statement be given, or the document or other thing be produced, *before a person appointed by the Court.* 28 U.S.C. § 1782(a). *(emphasis supplied).*

Such a Section 1782 application must be made to the United States District Court in the district in which the party from which discovery is sought is "found" or located. *Id.* United States District Courts have the authority to grant a discovery request so long as the following statutory requirements are met: (i) the discovery sought is for use in a foreign proceeding; (ii) the court is

in the district where the party from whom discovery is sought is "found" or located; and (iii) the party seeking discovery is a foreign tribunal or an "interested person" in the foreign proceeding within the meaning of the statute. *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 124 S. Ct. 2466 (2004). *See, also, Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376 F.3d 79, 83 (2d Cir. 2004). "Once the statutory requirements are met, a district court is free to grant discovery in its discretion". *Schmitz*, at 83–84 (*alterations and internal quotation marks omitted*).

Section 1782 vests authority in the U.S. District Courts to order discovery for use in foreign proceedings, but the statute does not require the Court to do so. Courts instead are instructed to consider several discretionary factors, as well as the overall policy of the statute, before authorizing discovery, including whether the request for discovery meets the "twin aims" of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Malev v. Hungarian Airlines v. United Tech. Int'l Inc.*, 964 F.2d 97, 100 (2d Cir. 1992).

United States federal law has embraced the concept of assisting foreign tribunals since 1855. The goal has always been to foster legal international cooperation in the interests of comity. Originally, the mechanism was to allow foreign governments to use "letters rogatory", a now antiquated formal manner of Court-to-Court assistance, to seek deposition testimony, before a U.S. government official, to be used in actions seeking foreign money judgments or judgments against property abroad. These letters rogatory were transmitted through diplomatic channels which was and remains a rather cumbersome and slow process. Congress expanded this right in 1948, in light of the significant changes that were occurring to commerce in the post-war,

Marshall Plan era. The 1948 amendment eliminated the requirement that a foreign government make the formal request on behalf of litigants in that country to the United States government, and allowed testimony to be taken in front of anybody designated by a federal court and expressly allowed discovery in aid of any "civil action" in any country with which the U.S. was "at peace." "Civil action" was later changed to "judicial proceeding". Importantly, the procedure was further recast in 1964, when the U.S. Congress added the right to seek discovery of documents and allowed parties to seek discovery for use in any "proceeding in a foreign or international tribunal" in order to extend the reach to assist in administrative and quasi-judicial proceedings like certain types of arbitration before government appointed arbiters. Another significant legislative change came in 1996, when Congress expressly added "criminal investigation conducted before a formal accusation" to the list of proceedings so that Section 1782 could be used to assist foreign governments or victims in contemplated or ongoing criminal matters.

Another important expansion of 28 U.S.C. § 1782, however, came in 2004, not by Congress, but via a thorough interpretation of Section 1782 by the U.S. Supreme Court. In its seminal decision in *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the Supreme Court allowed chip maker AMD discovery—from chip maker Intel—in aid of an antitrust complaint AMD had filed with the Directorate-General for Competition of the Commission of the European Communities. The *Intel* Court made several important departures from the requirements traditionally imposed by the lower courts on Section 1782 Applicants. First, the *Intel* Court expressly abrogated existing case law holding Section 1782 required that foreign court or tribunal allow for the same sort of discovery, nor did an Applicant have to show that U.S. law would allow the discovery sought in analogous U.S. proceedings. Second, the *Intel*

Court ruled that the statute imposes no requirement that the foreign proceeding be "imminent" or even "pending". Rather, the foreign proceeding need only be in *"reasonable contemplation"* to warrant discovery under Section 1782. *Intel*, 542 U.S. at 246, 124 S. Ct. at 2473. *See also, In re Request for Legal Assistance from the Netherlands in the Criminal Matter of Robert Wilhelm and Others*, 470 F. Supp. 2d 409 (S.D.N.Y. 2007).

Over time, primarily the Second Circuit, and a few other courts, clarified that the plain meaning of the terms "for use" in 28 U.S.C. § 1782 clearly includes the obtaining of discovery within the U.S. for use in a not yet pending but "reasonably anticipated" foreign legal proceedings. *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings,* 773 F3d. 456, 461 (2d Cir. 2014); *See also In re Matter of Application of Oxus Gold PLC*, 2007 WL 1037387 (D.N.J. 2007) (granting Section 1782 discovery where an arbitration was pending, noting information could be used in another legal proceeding not yet pending). The foreign person seeking discovery under Section 1782 must be or about to become a party to a proceeding before a foreign or international tribunal, which includes administrative and quasi-judicial proceedings. "An interested person includes a party to the foreign litigation, whether directly or indirectly involved". *Merck & Co., Inc.*, 197 F.R.D. 267. For example, an agent of a trustee in a foreign bankruptcy proceeding, although "indirectly" involved in the bankruptcy, qualifies as an "interested person" under the statute. *Lancaster Factoring Co., Ltd. v. Mangone*, 90 F.3d 38 (2d Cir. 1996). "A foreign legal affairs ministry, attorney general, or other prosecutor, fits squarely within the § 1782 interested person category". Federal Procedure, Lawyers Edition, 10B Fed. Proc., L. Ed. § 26:929 (November 2007). Again, to be clear, it is not required that an actual foreign proceeding be pending. *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d

1262 (11th Cir. 2014)(Foreign proceeding reasonably was contemplated, as required for court to grant Section 1782 application where Applicant after extensive internal audit provided facially legitimate and detailed explanation of its ongoing investigation and its intent to commence civil action).  Here Ms. Chen is part of civil proceedings pending in the United Kingdom so the threshold requirement is met.

**2. <u>Whether the Party Providing Discovery is "Found" in the District</u>.**

As set forth above, Burt is a principal of McLarty Associates located at 900 17th Street N.W. Suite 800, Washington, D.C. 20006. As Burt was working at that location in 2016 it would be reasonable to assume that all the relevant business records Applicant seeks are located within or are accessible from McLarty Associates' business premises in the District of Columbia. Also, Burt works in the District of Columbia and hence will be subject to service in the District for a deposition in this District.

**3. <u>Section 1782 *Intel* Factors a District Court Should Consider</u>**

The Supreme Court in deciding *Intel* made clear that "§ 1782(a) authorizes, but does not require, a federal district court to provide judicial assistance" in aid of a foreign proceeding. The *Intel* court set forth the following non-exhaustive list of factors for a district court to consider in reaching its decision: (i) whether the person from whom discovery is sought is a party to the foreign proceeding; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the petitioner is attempting to use Section 1782 as an attempt to circumvent discovery restrictions or policies in the forum country; and (iv) whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. As astutely pointed out by this Court:

Where such prerequisites are met, a court has the discretion to grant an application under Section 1782 if doing so would (1) provide an efficient means of assistance to participants in international litigation, and (2) encourage foreign countries to provide reciprocal means of assistance to United States courts and litigants. *In re Application of Euromepa,* 51 F.3d 1095, 1097, 1101 (2d Cir.1995). *Accord Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 264–66, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004) (noting factors for consideration in exercising court's discretion).

The need for Section 1782 aid increases where the party from which discovery is sought cannot easily be made party to foreign proceedings. As the *Intel* Court found: "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad". *Intel,* 542 U.S. at 264, 124 S.Ct. at 2471. The *Intel* Court found further that non-participants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid". *Id.* In the U.K. litigation, Ms. Chen, CML and KMG are the only parties to the litigation. Burt and McLarty Associates are not parties, nor is Burt listed by KMG as a witness in the U.K. litigation.

Furthermore, "Courts have determined that the receptivity of a foreign court to U.S. federal judicial assistance may be inferred from the existence of treaties that facilitate cooperation between the U.S. federal judiciary and the foreign jurisdiction". *In re Application of Imanagement Services Ltd.,* No. Civ. A. 05-2311, 2006 WL 54949 *1, *4 (D.N.J. Mar. 3, 2006), citing *In re Servicio Pan Americano de Proteccion,* 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004). *Convention on the taking of evidence abroad in civil or commercial matters.* Done at The Hague March 18, 1970. Entered into force October 7, 1972. 23 UST 2555; TIAS 7444; 847 UNTS 23. This treaty was ratified by United Kingdom 7 July1976. In support of and prior to the U.K.'s ratification of the 1970 Hague Convention, Parliament enacted the Evidence (Proceedings in

Other Jurisdictions) Act 1975. Pursuant to this legislation U.S. courts can ask British courts to gather evidence for U.S. legal proceedings via letters rogatory, which is consistent with the process set out in Rule 28 (b)(1)(B) of the Federal Rules of Civil Procedure. In addition, in the U.K., evidence can even be obtained in anticipation of U.S. proceedings by filing what is known as a *Norwich Pharamacal* application, which can be used to gather evidence prior to filing civil legal proceedings in the United States. *Norwich Pharamacal* orders compel unrelated third-parties to disclose information relating to fraudulent or tortious conduct as is alleged in the U.K. litigation against Ms. Chen. In other words, U.K. courts can order discovery for parties in U.S. civil litigation that is consistent with the assistance U.S. courts; can provide under Section 1782, both for pending and anticipated litigations in the United States. Finally, there is no provision of U.K law that prohibits a litigant in ongoing legal proceedings seeking disclosure from third-parties located abroad.

### 4. Discovery Process Under Title 18, United States Code, Section 1782

Finally, this court has "complete discretion in prescribing the procedure" for Section 1782 discovery. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995) (citation omitted). "If a district court is concerned that granting discovery under § 1782 will engender problems in a particular case, it is well-equipped to determine the scope and duration of that discovery." *Application of Esses*, 101 F.3d 873 (2d Cir. 1996). Courts have opined that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright". *Euromepa*, 51 F.3d at 1101 (citations omitted). *In re Edelman*, 295 F.3d 171 (2d Cir. 2002) makes it clear that Section 1782 may subject a foreign

party to a deposition. The Application here seeks a very narrow focus on discovery via carefully targeted subpoenas. *See*, discussion in fact section, *Supra.*

*Intel* and other controlling Section 1782 cases make it clear that the discretionary factors discussed above are not exhaustive. Overall, courts must also consider whether granting discovery pursuant to Section 1782 meets the "twin aims" of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts". *Malev. v. Hungarian Airlines v. United Tech. Int'l Inc.*, 964 F.2d 97, 100 (2d Cir. 1992). *See also, Intel*, 542 U.S. at 252. To further those aims, Section 1782 does not impose requirements that the material sought in the United States be admissible under the laws of the foreign jurisdiction. *Intel*, 542 U.S. at 253. Admissibility of the evidence in the foreign proceeding may be a relevant consideration; however, courts have warned that to deny a discovery petition could deprive a petitioner/applicant "of any opportunity even to try to offer the evidence". *In re Application of Grupo Qumma, S.A. de C.V.*, 2005 WL 937486 at *1 (S.D.N.Y. April 22, 2005). United States courts must also avoid an admissibility analysis for reasons of judicial and economic efficiency. *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 466 F. Supp.2d 1020 (N.D. Ill. 2006). Instead, it is for the foreign tribunal to determine admissibility, and that tribunal "will be in a better position to do so if [a petitioner] is permitted to conduct the requested discovery first". *Grupo Qumma*, 2005 WL 937486 at *3.

### 5.  **Appointment of a Person as Commissioner to Collect Evidence**

Commensurate with past practice under 28 U.S.C. § 1782, a federal court shall appoint one or more attorneys as a "commissioner". Section 1782(a) empowers a federal judge: "[T]o order [a person] to give his testimony or statement or to produce a document or other thing for

use in a proceeding in a foreign or international tribunal, including criminal investigations

conducted before formal accusation. 28 U.S.C. § 1782(a)". In addition, in an order issued

pursuant to Title 28, United States Code, Section 1782 this Court:

[M]ay direct that the testimony or statement be given, or the document or other thing be
produced, before a person appointed by the court. By virtue of his appointment, the person
appointed has power to administer any necessary oath and take the testimony or statement. The
order may prescribe the practice and procedure, which may be in whole or part the practice and
procedure of the foreign country or the international tribunal, for taking the testimony or
statement or producing the document or other thing. To the extent that the order does not
prescribe otherwise, the testimony or statement shall be taken, and the document or other thing
produced, in accordance with the Federal Rules of Civil Procedure. *Id.*

Nothing in Section 1782 suggests any limitation on a court's power to exercise "complete

discretion in prescribing the procedure to be followed", pursuant to 28 U.S.C. § 1782. *See In re*

*Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 693

(D.C. Cir. 1989) (citing S. Rep. 88-1580, reprinted in 1964 U.S.C.C.A.N. 3782, 3789); *see also*

Fed. R. Crim. P. 57(b) ("A judge may regulate practice in any manner consistent with federal

law, these rules, and the local rules of the district."); *White v. Nat'l Football League*, 41 F.3d

402, 409 (8th Cir. 1994) (a court may issue whatever process it deems necessary to facilitate

disposition of a matter before it). The traditional practice under 28 U.S.C. § 1782, which, prior to

the enactment of 18 U.S.C. § 3512 in 2009, was primarily invoked for the gathering of evidence

in support of foreign criminal investigations by attorneys employed by the United States

Department of Justice. In such cases the district court appointed a "commissioner" to issue

orders "requiring the appearance of a person, or the production of documents or other things, or

both". If this Court so orders, the commissioner may use the form entitled "Commissioner's

Subpoena" to obtain the requested evidence and information. *See In re Commissioner's*

*Subpoenas*, 325 F.3d at 1291 (incorporating in pertinent part a district court's order directing use

of commissioner's subpoenas); *Erato*, 2 F.3d at 13-14 (same). A Commissioner's Subpoena is

simply a version of this Court's "order" to be issued by the person appointed by the court, directing the production of evidence within the District that the court sits under parameters deemed reasonable and acceptable to this Court. 28 U.S.C. § 1782(a).

### 6. *Ex Parte* **Application and Expedited Consideration**

This application is made by the Applicant *ex parte*, consistent with past practice under 28 U.S.C. § 1782. *In re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d at 688; *In re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Such an ex-parte application can also be made for evidence that may be used in contemplated or ongoing foreign civil litigation. *IN RE Application of Harry Sargeant, III, to issue a Subpoena for the taking of Discovery for use in a Foreign Proceeding*, 278 F.Supp.3d 814, 817, fn. 1 (SDNY 2019) (It is "neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte". Citing and quoting *Gushlak v. Gushlak, 486 Fed.Appx. 215, 217 (2d Cir. 2012)*[4]. Applicant wishes to remind the Court that KMG and Zhangulov in the U.K. litigation rather conveniently claim they do not have key records relating to nay relationship they may have had with Burt.

That said, after McLarty and Associates are ordered to produce documents KMG will learn of this development immediately. Because the trial date for the U.K. litigation is set for 6 July 2020 the U.S. discovery process should proceed immediately. The world is currently experiencing severe economic and social challenges in combating the COVID-19 virus and the U.K. trial may be delayed but possibly not. Respectfully, the Applicant seeks this Court to

---

[4] The jurisdictional analysis set forth *In re Sargeant* only applies to efforts to obtain evidence from **foreign legal entities** that are only marginally located in a District. This analysis should not and does not apply to Court orders compelling U.S. entities located in this District to produce evidence located in this district. The court has clear personal jurisdiction over legal persons like McLarty Associates, located in Washington, D.C. and thus this application is no way and end run around the extra-territorial reach of U.S. law.

consider giving expedited consideration of her application for 28 U.S.C. § 1782 relief, as

document production can reasonably be accomplished without exposing anyone to the virus.

## C.        Conclusion

The instant Application is exactly the type of request contemplated by 28 U.S.C. § 1782.

As demonstrated by its efforts to improve legislation related to providing foreign legal

assistance, Congress intended the United States to set an example by making judicial assistance

generously available. *See, e.g., In re Request for Assistance from Ministry of Legal Affairs of*

*Trinidad and Tobago*, 848 F.2d 1151, 1153-54 (11th Cir. 1988). Accordingly, to execute this

Application and any related supplements Applicant asks this Court to issue the attached Order

pursuant to 28 U.S.C. § 1782(a), appointing the undersigned attorney as commissioner and

authorizing **Addy J. "Jack" de Kluiver** to take the actions necessary—including the issuance of

commissioner's subpoenas to obtain the evidence requested as set forth in greater detail in the

fact section *Supra*, as well as seek other evidence that may be located in this District, if

authorized by this Court via supplemental applications, and, finally, to adopt such procedures in

receipt of the evidence as are consistent with the intended use of such evidence.


Dated:  19 March 2020                              Respectfully submitted,

                                                   **BAKER DE KLUIVER PLLC**

                                                   Addy J. "Jack" de Kluiver
                                                   DC Bar #1046349
                                                   1101 New York Avenue NW, Suite 1000
                                                   Washington, D.C., 20005
                                                   jackdekluiver@bakerdekluiver.com
                                                   (202) 873-4008

                                                   *ATTORNEY FOR APPLICANT*